In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2989

MICHAEL A. MILLER,

*Plaintiff-Appellant,*

*v.*

ST. JOSEPH COUNTY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:11-cv-00217-RL — **Rudy Lozano**, *Judge.*

ARGUED APRIL 22, 2015 — DECIDED JUNE 9, 2015

Before POSNER and KANNE, *Circuit Judges*, and DARRAH,
*District Judge.**

POSNER, *Circuit Judge*. The plaintiff, Michael Miller, a ser-
geant in the Detective Bureau of the St. Joseph County (Indi-
ana) Police Department, where he had worked for more than
thirty years, filed this suit against the County (which hap-

* Hon. John W. Darrah of the Northern District of Illinois, sitting by des-
ignation.

pens to be the county in which South Bend is located), the County Sheriff (Michael Grzegorek), who is in charge of the department and also the county jail, and other entities and individuals unnecessary to mention let alone discuss. Miller's suit charges that the defendants had, in violation of several federal statutes, discriminated against him because he's black. The district court granted summary judgment in favor of the defendants, precipitating this appeal.

Grzegorek was elected Sheriff in 2010 on the Democratic ticket. In the Democratic primary preceding the election, Miller had been a candidate along with Grzegorek, see "2010 Primary, Meet the Candidates Night – Sheriff Candidate Speeches," https://youtu.be/DepuTOcJTNI?t=3m32s (visited June 4, 2015), and despite their rivalry they had been cordial. After Grzegorek, having won the primary, went on to win the general election, Miller called him and expressed interest in being appointed either Assistant Chief of the Police Department (which would have made him the Sheriff's number two) or Warden of the county jail. Grzegorek was noncommittal, and eventually passed Miller over for these positions, instead appointing as Assistant Chief a man who had been a Sheriff of the St. Joseph County Police Department from 1985 to 1998—hence a predecessor, though not the immediate predecessor, of Grzegorek. For Warden of the jail Grzegorek appointed the current Warden—in other words he retained her.

After the election, the head of the Detective Bureau, also an appointee of the new Sheriff, either suggested to Miller (who remember was one of the Bureau's detectives) that he take charge of the Department's "Property Room," or ordered him to do so. That is a room in the basement of the

county jail in which the Department had accumulated about a thousand guns, which needed to be sorted—some to be destroyed, some to be returned to their owners, etc. Miller took the position, which involved no change in his pay, benefits, or rank, but several months later, expressing dissatisfaction with his assignment to the Property Room, he was offered a position in the Department's Family Violence Unit. He declined, and instead continued working in the Property Room until the sorting was complete, at which point he returned to his other duties in the Detective Bureau.

Miller now claims that his assignment to the Property Room was degrading, and that he was not asked about his possible interest in other vacant positions, besides Assistant Chief and Warden, that would have been promotions for him. Those positions were police captain and police lieutenant, which are ranks above sergeant.

The district judge trudged patiently through the "direct" and "indirect" methods of proving discrimination, and concluded that under neither method could the plaintiff defeat the defendants' motion for summary judgment. We do not question the judge's analysis or result, but we agree with Judge (now Chief Judge) Wood's proposal to substitute for these cumbersome tests a simple requirement that "in order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she [or, of course, he if the plaintiff is male] is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason." *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (concurring opin-

ion). That does not do away with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—we have no authority to overrule a Supreme Court decision. So one way to establish discrimination remains by making a prima facie case to which the defendant offers no rebuttal. If the plaintiff makes a prima facie case of unlawful discrimination, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. at 802.

The plaintiff satisfies the first two elements of the test. He is black, and he suffered an adverse action, or rather adverse actions—he was denied each of the several alternative promotions that he sought. But there is no evidence that those denials had anything to do with his race. His brief in this court says very little about the racial composition of either St. Joseph County or the County's police department. Nor is there any evidence of racial slurs or other manifestations of racial hostility. With regard to the plaintiff's not being appointed either Assistant Chief of the police department or Warden of the county jail, it is apparent that his qualifications were less impressive than those of the persons appointed to (or in the case of the Warden retained in) the positions. About the Property Room there is disagreement over whether he was asked whether he was interested in the job, or was ordered to fill it, but even if the second explanation is correct (as we'll assume for purposes of analysis), there is nothing to suggest that race was a factor. *Someone* had to prune the department's excessive gun collection, and it was natural to appoint a sergeant from the Detective Bureau, the head of which testified that he wanted an experienced sergeant to fill the position because he thought that such an appointment would promote cooperation with the forensic labs of the Indiana State Police.

And even if the plaintiff was ordered to take on the job of managing the Property Room rather than asked whether he was interested in it, as soon as he tired of it—after only a few months—he was offered an opportunity to switch to a different assignment in the Family Violence Unit. He rejected the offer, and after the gun project was complete resumed working on cases in the Detective Bureau.

As for the captain and lieutenant openings that were not offered to him, there is no indication that he didn't know about them; if knowing about them he had wanted to be considered for them, he should have told someone. And finally his wages and benefits were the same before, during, and after the period in which he claims to have been discriminated against. He was a sergeant at the beginning, in the middle, and at the end of the period; there was no cut in his wages and benefits during his sojourn as head of the Property Room, which remember was brief. There is also no evidence that he would have gotten a promotion to lieutenant's or captain's rank were he white rather than black. And also no evidence to support his further claim that his failure to be promoted and his transfer to the Property Room were acts of retaliation against him for exercising his First Amendment right to run against Grzegorek in the Democratic primary.

He also challenges the police department's practice of promoting officers via "temporary indefinite assignments" as distinct from basing promotions on performance on "promotional exams." But he offers no explanation of why this practice would discriminate against black members of the police force.

So his federal claims fail. He also has a supplemental state law claim for intentional infliction of emotional distress. But he is barred from pressing it, because he failed to comply with Ind. Code § 34-13-3-8(a), which requires notice to a county of tort claims against it within 180 days after the action giving rise to the claim.

The judgment of the district court dismissing the plaintiff's suit is

AFFIRMED